IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

    **v.**                               **Criminal Case No. 3:15cr194**

DEXTER LAMONT BROWN,

        **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Dexter Lamont Brown's Motion for Compassionate Release Pursuant to Section 603(b) of the First Step Act (the "Motion for Compassionate Release").[1]  (ECF No. 63.)  The United States responded in opposition.  (ECF No. 68.)  Mr. Brown has not replied, and the time to do so has expired.

This matter is ripe for disposition.  The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process.  For the reasons articulated below, the Court will deny without prejudice the Motion for Compassionate Release.  (ECF No. 63.)

### I. Background

#### A.    Mr. Brown's Underlying Offense

On February 2, 2016, Mr. Brown was charged in a three-count superseding indictment: one count of Possession with Intent to Distribute Cocaine Base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count One), one count of Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1) (Count Two), and one count of Possessing a Firearm or in

---

[1] The Motion for Compassionate Release incorporates by reference Mr. Brown's Request for Compassionate Release (the "Request").  (ECF No. 58.)

Furtherance of a Drug-Trafficking Crime in violation of 18 U.S.C. § 924(c).  (ECF No. 13, at 1–2.)  On April 8, 2016, Mr. Brown entered into a written plea agreement with the United States in which he pleaded guilty to the charge of possession with intent to distribute cocaine base (Count One).  (ECF No. 37, at 1.)

The Plea Agreement and the Statement of Facts describe the conduct of Mr. Brown's underlying offense.  (ECF Nos. 37, 38.)  In September 2025, an individual was arrested by a City of Richmond Police Officer (the "RPD Officer") for engaging in prostitution.  (ECF No. 38 ¶ 2.)  This individual informed the officer that "in and around the 1600 block of Hickory Street in the City of Richmond a person known as 'Big Man,' . . . engaged in drug-trafficking and always had a gun in a red lunchbox and crack in his pocket."  (ECF No. 38 ¶ 2.)  On September 15, 2015, the RPD Officer drove an unmarked car to the area and saw Mr. Brown "sitting in the stairwell with a red lunchbox."  (ECF No. 38 ¶ 3.)  The next day, on September 16, 2015, the RPD Officer and members of the Focus Mission Team ("FMT") went to Hickory Street to watch Mr. Brown.  (ECF No. 38 ¶ 4.)  The RPD Officer "then saw three individuals over the course of 30 minutes approach [Mr. Brown], follow behind or lead [Mr. Brown] into building 1603, spend a few seconds with [Mr. Brown], exit the building, and then quickly leave the area while [Mr. Brown] lingered in the area."  (ECF No. 38 ¶ 4.)  Based on these interactions, uniformed RPD officers detained Mr. Brown and brought in a narcotics detection dog.  (ECF No. 38 ¶ 5.)  The dog "alerted to [Mr. Brown's] waist band, and a search of [Mr. Brown's] person revealed that he possessed crack cocaine in his left pocket."  (ECF No. 38 ¶ 5.)  The dog also "alerted to [Mr. Brown's] lunch box" and "[a] search of the lunchbox revealed that it contained a Taurus, 38 Special revolver . . . and cigar packages that smelled like marijuana."  (ECF No. 38 ¶ 6.)  It was

later discovered that Mr. Brown "was a prior felon, with at least two prior convictions for sale or distribution of controlled substances." (ECF No. 38 ¶ 7.)

Prior to sentencing, the Probation Officer prepared the Presentence Report ("PSR") for Mr. Brown, summarizing his criminal history. (ECF No. 60.) Mr. Brown's Base Offense Level was 14. (ECF No. 60 ¶ 14.) He received a two-point enhancement for possessing a dangerous weapon during the offense conduct, resulting in an Adjusted Offense Level of 16. (ECF No. 60 ¶¶ 15, 19.) However, the Probation Officer determined that Mr. Brown was a "Career Offender" pursuant to U.S.S.G. § 4B1.1,[2] which resulted in an offense level of 32. (ECF No. 60 ¶ 20.) Mr. Brown received a three-point reduction for Acceptance of Responsibility, producing a Total Offense Level of 29. (ECF No. 60 ¶¶ 21–23.)

Mr. Brown's prior offenses resulted in 12 criminal history points. (ECF No. 60 ¶ 41.) Pursuant to U.S.S.G. § 4A1.1(d)[3], because Mr. Brown "committed the [] offense while under a

---

[2] The relevant section of U.S.S.G § 4B1.1 provides that:

> (a) A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a) (U.S. Sent'g Comm'n 2016).

[3] In the 2023 Criminal History Amendments to the Untied States Sentencing Guidelines, Part A of Amendment 821 (status points under § 4A1.1) and Part B of Amendment 821 (Zero-Point Offenders) changed this guideline and did so, importantly, retroactively. What is now U.S.S.G. § 4A1.1(e) — relative to the former § 4A1.1(d) — can reduce the number of points applicable to an offender's criminal history when the offense was committed while under a criminal justice sentence. The application to zero-point offenders could also reduce an individual's criminal history points.

Mr. Brown filed a separate motion requesting relief pursuant to Amendment 821, (ECF No. 69), which this Court denied, (ECF No. 77). As provided in the Court's denial, Amendment 821 does not reduce Mr. Brown's criminal history points because he qualified as a Career

criminal justice sentence for Unlawful Entry and Unlawful Wounding," two points were added, leading to a total criminal history score of 14. (ECF No. 60 ¶¶ 42–43.) A total criminal history score of 14 results in a Criminal History Category of VI (the highest category). (ECF No. 60 ¶ 43.)

According to the law at the time, Mr. Brown's Total Offense Level of 29 and a Criminal History Category of VI resulted in a recommended Sentencing Guidelines range of 151–188 months' imprisonment. (ECF No. 60 ¶ 91.)

On July 27, 2016, the Court granted Mr. Brown's request for a sentence below the advisory guidelines and sentenced Mr. Brown to 132 months' imprisonment, to be followed by three years of supervised release. (ECF No. 51, at 2–3; *see* ECF No. 52, at 3 (sealed).)

The PSR also provided information on Mr. Brown's physical and mental condition and his history of substance abuse. (ECF No. 60 ¶¶ 67–82.) Mr. Brown reported that tendons in his right hand were cut when he was 24 years old. (ECF No. 60 ¶ 68). Due to this prior injury, Mr. Brown reports he cannot bend his middle and ring fingers of his right hand, and suffers constant pain, but that he does not take any medication for this injury. (ECF No. 60 ¶ 68.) Mr. Brown also reported that he has eczema, but that his health was otherwise good. (ECF No. 60 ¶ 68.) Regarding Mr. Brown's mental and emotional health, Mr. Brown reported diagnoses of paranoid schizophrenia and bipolar disorder and recounted a lengthy history of suicidal ideations, anxiety, and treatment programs but stated that he has never been prescribed medications for his conditions. (ECF No. 60 ¶¶ 70–73.) Mr. Brown also noted that he began consuming alcohol at the age of 12 and using drugs at the age of 14. (ECF No. 60 ¶¶ 75–76.) He participated in

---

Offender. (ECF No. 77, at 2.) However, even if Amendment 821 applied, Mr. Brown's criminal history points would only be reduced to 13, which would not lower his Criminal History Category of VI. Mr. Brown's final recommended guidelines are unaffected by Amendment 821.

substance abuse treatment while incarcerated. (ECF No. 60 ¶ 79.) He also participated in an inpatient drug treatment program for one month in 2006. (ECF No. 60 ¶ 79.)

As of November 15, 2024, Mr. Brown has served 106 months and 29 days of his 132-month term of imprisonment, or approximately 81 percent of his sentence. (*See* ECF No. 60, at 1.) Mr. Brown is currently housed at FCI Hazelton in Bruceton Mills, West Virginia. *See Fed. Inmate Locator*, BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Nov. 15, 2024); *see FCI Hazelton*, BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/haf/ (last visited Nov. 15, 2024). The Bureau of Prisons ("BOP") lists Mr. Brown's projected release date as September 16, 2025. *Id.*

**B.      Mr. Brown's Motion for Compassionate Release**

On October 31, 2022, Mr. Brown filed a *pro se* Request for Compassionate Release. (ECF No. 58.) After Counsel was appointed, Mr. Brown filed the instant Motion for Compassionate Release on February 1, 2023, which incorporates by reference Mr. Brown's *pro se* Request. (ECF No. 63.) Mr. Brown asks for immediate release, "or to a sentence of home detention so he can receive the proper medical and mental health treatment." (ECF No. 63, at 1.)

**1.      Mr. Brown's Mental and Physical Health Conditions**

In the Request, Mr. Brown discusses his deteriorating mental health conditions and contends that his multiple requests for treatment have been ignored. (ECF No. 58, at 1.) In both the Request and the Motion, Mr. Brown explains that he has not received treatment for his mental health conditions and therefore his mental health has "deteriorated and languished" while incarcerated. (ECF No. 63, at 6.) Specifically, Mr. Brown contends that the conditions at FCI Hazelton have significantly contributed to his anxiety and that the facility "fac[es] the issues of violence, understaffing, and unqualified officials." (ECF No. 63, at 7.) For instance, Mr. Brown

5

asserts he was bitten by another inmate in 2021.[4]  Mr. Brown also states that "his efforts to seek help from the [Bureau of Prisons'] psychiatric services have been denied," and "none of [his diagnosed mental health conditions] are listed on Mr. Brown's records."  (ECF No. 63, at 7–8.) While he admits that his disciplinary records contain serious incidents,[5] Mr. Brown avers these are the result of the "dangerous environment he is in and the stressors he is facing."  (ECF No. 63, at 11.)  Finally, Mr. Brown requests this Court look at his accomplishments of "working to obtain his GED and [] tak[ing] numerous other courses offered to him" when considering his request for compassionate release.  (ECF No. 63, at 11.)

### 2.    Response from the United States

On February 16, 2023, the United States filed a Response in Opposition.  (ECF No. 68.) The United States objects to Mr. Brown's requested sentence reduction, arguing that (1) Mr. Brown's records show that he "has received treatment for each of the medical conditions that he has evidence of reporting to BOP medical staff," (ECF No. 68, at 5), and (2) "the statutory sentencing factors weigh against release," (ECF No. 68, at 8).

## II.  Compassionate Release Under the First Step Act of 2018

### A.    Legal Standard

Prior to the First Step Act of 2018, an individual could not petition the district court for relief on compassionate release grounds without approval from the BOP.  *See Coleman v. United*

---

[4] A medical record showing that Mr. Brown reported the incident can be found at ECF 62-2, p. 4.  However, no records confirming that information are included in this record.

[5] Mr. Brown's disciplinary records include infractions for "Refusing to Work (2022); Engaging in Demonstration (2022); Fighting With Another Inmate (2021); Possession of a Dangerous Weapon (2020); Refusing to Obey an Order (2020); Disruptive Conduct (2020); Refusing Alcohol/Drug Test (2020); Possession of a Dangerous Weapon (2019); Refuse to Obey an Order (2x in 2019); and Destroy/Dispose Item (Contraband) (2019)."  (ECF No. 67, at 2.)

*States*, 465 F. Supp. 3d 543, 546 (E.D. Va. 2020).  In 2018, Congress enacted the First Step Act

to provide incarcerated individuals the opportunity to directly petition the courts for

compassionate release under 18 U.S.C. § 3582(c)(1)(A).[6]  First Step Act of 2018, Pub. L. No.

115–391, 115th Cong. (2018).  Under the First Step Act, criminal defendants may petition courts

on their own initiative to modify their sentences.  *Coleman*, 465 F. Supp. 3d at 546.

Before granting a reduction, courts must consider the factors set forth in 18 U.S.C.

§ 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-

---

[6] Section 3582(c) states, in pertinent part:

The court may not modify a term of imprisonment once it has been imposed
except that—

    (1) in any case—

        (A) the court, upon motion of the Director of the Bureau of
Prisons, or upon motion of the defendant after the defendant has
fully exhausted all administrative rights to appeal a failure of the
Bureau of Prisons to bring a motion on defendant's behalf or the
lapse of 30 days from the receipt of such a request by the warden
of the defendant's facility, whichever is earlier, may reduce the
term of imprisonment (and may impose a term of probation or
supervised release with or without conditions that does not exceed
the unserved portion of the original term of imprisonment), after
considering the factors set forth in section 3553(a) to the extent
that they are applicable, if it finds that—

            (i) extraordinary and compelling reasons warrant such a
reduction . . .
                and that such a reduction is consistent with
applicable policy statements issued by the
Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

conviction conduct. *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)); *see also United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B)). However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification. *See* 28 U.S.C. § 994(t).[7]

### B.    Exhaustion of Administrative Remedies

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020) ("Congress, aware of the BOP's history of extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his [or her] request is not acted on within that time."). "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court." *Casey v. United*

---

[7] 28 U.S.C. § 994(t) states:

The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. *Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.*

28 U.S.C. § 994(t) (emphasis added).

*States*, No. 4:18cr4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020); *see also United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (same).

The United States correctly concedes that Mr. Brown has exhausted his administrative remedies by "fil[ing] a request for compassionate release with the Warden at Thompson USP" on October 4, 2022 and "[t]hat request was denied on or about October 7, 2022." (ECF No. 68, at 3.)

### C.      Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. § 3582(c)(1)(A)(i). Congress did not define "extraordinary and compelling reasons" in the statute. The United States Sentencing Commission does, however, further define "extraordinary and compelling reasons." U.S.S.G. § 1B1.13(b); *see United States v. Burrell*, No. 3:04-CR-364 (JAG), 2023 WL 7726404, at *4 n.7 (E.D. Va. Nov. 15, 2023). The Sentencing Commission

> addressed the issue in a policy statement, United States Sentencing Guideline § 1B1.13, which provided the BOP with several categories of extraordinary and compelling reasons to consider. For years following the passage of the First Step Act, the Sentencing Commission failed to update § 1B1.13 to account for motions filed by defendants, meaning the policy did not bind the courts when presented with a defendant's motion for compassionate release. A court therefore remained empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.

*Burrell*, 2023 WL 7726404, at *4, n. 7 (cleaned up) (citing *McCoy*, 981 F.3d at 276, 281–82, 284).

The 2021 Sentencing Guidelines enumerated four bases on which to evaluate a motion for compassionate release. U.S.S.G. § 1B1.13 cmt. n.1(A)–(D) (U.S. SENT'G COMM'N 2021) identified four bases to establish extraordinary and compelling reasons for release:

> (A) medical conditions;
> (B) age;
> (C) family circumstances; and,
> (D) other reasons.

U.S.S.G. § 1B1.13 cmt., n.1(A)–(D).

In 2023, the United States Sentencing Commission published new sentencing guidelines amendments (the "2023 Sentencing Guidelines Amendments" or "2023 Amendments"). Pursuant to the 2023 Amendments, the Sentencing Guidelines now identify six instructive categories of extraordinary and compelling reasons that may allow for a sentence reduction.[8]

These are:

> (1) certain medical circumstances of the defendant, such as terminal illness or the inability to receive specialized medical care while incarcerated, [U.S.S.G.] § 1B1.13(b)(1)[9];
>
> (2) the defendant's age, *id.* § 1B1.13(b)(2)[10];
>
> (3) the defendant's family circumstances, *id.* § 1B1.13(b)(3)[11];
>
> (4) the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer, *id.* § 1B1.13(b)(4)[12];

---

[8] *See* Appendix A, U.S.S.G § 1B1.13(b) (2023).

[9] *See* App. A, at **U.S.S.G. § 1B1.13(b)(1)**; *cf.* Appendix B, **U.S.S.G. § 1B1.13 cmt. n.1(A).**

[10] *See* App. A, at **U.S.S.G § 1B1.13(b)(2)**; *cf.* App. B, at **U.S.S.G. § 1B1.13 cmt. n.1(B).**

[11] *See* App. A, at **U.S.S.G. § 1B1.13(b)(3)**; *cf.* App. B, at **U.S.S.G. § 1B1.13 cmt. n.1(C).**

[12] *See* App. A, at **U.S.S.G. § 1B1.13(b)(4).**

(5)'any other circumstances or combination of circumstances . . . similar in gravity to' the circumstances 'described in paragraphs (1) through (4).' *Id.* § 1B1.13(b)(5)[13], and,

(6) the defendant received an 'unusually long sentence,' *id.* § 1B1.13(b)(6).[14]

*United States v. Tucker*, 2023 WL 8357340, at *5 (D. Md. Dec. 1, 2023).

The United States Court of Appeals for the Fourth Circuit explained—even before the 2023 Sentencing Guidelines Amendments—that "[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or her] own behalf . . . § 1B1.13 does not apply, and . . . § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *McCoy*, 981 F.3d at 281.  The Fourth Circuit further illuminated that:

> [w]hen Congress authorized district courts, as a matter of discretion, to release an inmate from prison based on extraordinary and compelling reasons, it did so to introduce compassion as a factor in assessing ongoing terms of imprisonment, authorizing a district court to give greater weight to an inmate's personal circumstances—when sufficiently extraordinary and compelling—than to society's interests in the defendant's continued incarceration and the finality of judgments.

*United States v. Hargrove*, 30 F.4th 189, 197 (4th Cir. 2022).

Since *McCoy* and *Hargrove*, the 2023 Amendments have taken effect.  These Amendments clarify the Commission's view on what could constitute "extraordinary and

---

[13] *See* App. A, at **U.S.S.G. § 1B1.13(b)(5)**; *cf.* App. B., at **U.S.S.G. § 1B1.13 cmt. n.1(D).**

[14] *See* App. A, at **U.S.S.G. § 1B1.13(b)(6).**

compelling reasons" for a sentence reduction under the First Step Act.[15]  The *McCoy* court has

noted, however, that the Guidelines, while helpful, are merely advisory and do not bind the

Court.  "[D]istrict courts are 'empowered . . . to consider *any* extraordinary and compelling

reason for release that a defendant might raise.'"  *McCoy*, 981 F.3d at 284 (quoting *United States*

*v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)); *see also United States v. Davis*, 99 F.4th 647, 658

(4th Cir. 2024) (confirming that under the 2023 Amendments, courts can still "consider any

extraordinary or compelling reason for release raised by a defendant").

     The United States Supreme Court has determined that "the First Step Act allows district

courts to consider intervening changes of law or fact in exercising their discretion to reduce a

sentence[.]" *Concepcion v. United States*, 597 U.S. 481, 500 (2022).  District courts within the

Fourth Circuit have decided that sentencing disparities resulting from intervening changes in the

Fourth Circuit's interpretation of the sentencing guidelines can constitute an "extraordinary and

compelling reason" for compassionate release.[16]  *See, e.g., United States v. Redd*, 444 F. Supp.

---

[15] As other courts have observed,

> [t]he Fourth Circuit has yet to address the impact the amended Sentencing
> Guidelines have on *McCoy* and similar rulings or precisely how courts should
> apply the amended policy statement in motions for compassionate release,
> particularly motions filed before November 1, 2023.  The Court need not reach
> this question, however, because [Mr. Brown] has failed to establish
> an extraordinary and compelling reason to reduce his sentence applying both the
> case law before November 1, 2023, and the amended Sentencing Guidelines.

*Burrell*, 2023 WL 7726404, at *4 n.7.

[16] The 2023 Sentencing Guideline Amendments added subsection (c) to U.S.S.G.
§ 1B1.13, which provides that a change in the law, or in non-retroactive Guidelines amendments,
ordinarily shall not be considered when determining whether extraordinary and compelling
reasons exist.  However, subsection (c) includes an important caveat:  "if a defendant otherwise
establishes that extraordinary and compelling reasons warrant a sentence reduction under this
policy statement, a change in the law (including an amendment to the Guidelines Manual that has

3d 717, 723–724 (E.D. Va. 2020) (finding that the "gross disparity between the sentence Mr.

Redd received and the sentence he would have received after the First Step Act . . . constitute[s]

[an] extraordinary and compelling reason[] that warrant[s] a reduction to Mr. Redd's sentence");

*see also United States v. Fennell*, 570 F. Supp. 3d 357, 363 (W.D. Va. 2021) (finding that "the

significant disparity between Fennell's current sentence and the [ten years reduced] sentence he

would face today for the same offense provides an extraordinary and compelling basis for a

sentence reduction under § 3582(c)(1)(A)"); *United States v. Arey*, 461 F. Supp. 3d 343, 350

(W.D. Va. 2020) ("The fact that if [the defendant] were sentenced today for the same conduct he

would likely receive a [forty year] lower sentence than the one he is currently serving constitutes

an 'extraordinary and compelling' reason justifying potential sentence reduction under

§ 3582(c)(1)(A)").

A plethora of unpublished cases that follow this same reasoning. *See, e.g., United States

v. Banks*, 2022 WL 220638, at *2–3, *6 (W.D. Va. Jan. 25, 2022) (88-month difference between

the low end of defendant's career offender sentencing range and the low end of the non-career

offender sentencing range was "such [a] gross disparit[y] in sentencing" that it constituted an

extraordinary and compelling circumstance); *United States v. Williams*, No. 1:14-CR-428 (TSE),

2021 WL 5827327, at *6–7 (E.D. Va. Dec. 8, 2021) (difference of "more than three years longer

than the high end of the guidelines that would have applied under *Norman*"[17] warranted a

reduction in defendant's sentence from 168 months to 125 months); *United States v. Huggins*,

---

not been made retroactive) may be considered for purposes of determining the extent of any such
reduction." U.S.S.G. § 1B1.13(c) (2023).

[17] *United States v. Norman*, 935 F.3d. 232 (4th Cir. 2019) (finding that defendant was
subject to a lower guideline range because a drug conspiracy conviction did not constitute a
"controlled substance offense" because the statute of conviction "criminalize[d] a broader range
of conduct than that covered by generic conspiracy").

2021 WL 3025459, at *4 (W.D. Va. July 16, 2021) (sentencing disparity of more than five years

was a "gross disparity" and an "extraordinary and compelling" reason warranting a sentence

reduction); *but see United States v. Hinton*, No. 2:15-CR-80 (MSD), 2022 WL 988372, at *5

(E.D. Va. Mar. 31, 2022) (three to six year sentencing disparity "not so drastic that it constitutes

an extraordinary and compelling reason for relief").  When considering the 2018 congressional

modifications to stacked penalties for § 924(c) convictions that are relevant here, the Fourth

Circuit has specifically held that "courts legitimately may consider, under the 'extraordinary and

compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as

dramatically longer than necessary or fair." *McCoy*, 981 F.3d at 275, 285–86 (quoting *Redd*, 444

F. Supp. 3d at 723).

    The 2023 Sentencing Guidelines Amendments explain in greater detail what a court

should consider when considering medical circumstances as a basis for an extraordinary and

compelling reason to grant compassionate release.

    The relevant section of U.S.S.G. § 1B1.13(b) reads:

(1) MEDICAL CIRCUMSTANCES OF THE DEFENDANT.—
        *       *       *
        (B) The defendant is—

                (i) suffering from a serious physical or medical condition,

                (ii) suffering from a serious functional or cognitive
                impairment, or

                (iii) experiencing deteriorating physical or mental health
                because of the aging process,

            that substantially diminishes the ability of the defendant to
            provide self-care within the environment of a correctional
            facility and from which he or she is not expected to recover.

        (C) The defendant is suffering from a medical condition that
            requires long-term or specialized medical care that is not

being provided and without which the defendant is at risk of
serious deterioration in health or death.

U.S.S.G. § 1B1.13(b)(1)(B)–(C).

### D.    Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release

Even after finding a sufficient "extraordinary and compelling reason" for compassionate

release, the Court must then consider the Section 3553(a) factors and any relevant post-

conviction conduct before modifying a defendant's sentence.  18 U.S.C. § 3582(c)(1)(A);

*Martin*, 916 F.3d at 397–98; *McDonald*, 986 F.3d at 412.  The Court must weigh factors

including "the nature and circumstances of the offense and the history and characteristics of the

defendant."  18 U.S.C. § 3553(a)(1).  The Court also must consider "the need for the sentence

imposed . . . to promote respect for the law . . . ; to afford adequate deterrence to criminal

conduct; . . . [and] to protect from the public from further crimes of the defendant."  18 U.S.C.

§ 3553(a)(2).  The statutory sentencing factors direct the Court to consider the kinds of sentences

available and the sentencing range established for the offense.  18 U.S.C. § 3553(a)(4).

### IV. Analysis

After due consideration, the Court will deny the Request and the Motion for

Compassionate Release.  (ECF Nos. 58, 63.)  Although the United States correctly concedes that

Mr. Brown has exhausted his administrative remedies, (ECF No. 68, at 3), the Court will deny

the Motion for Compassionate Release upon finding that Mr. Brown does not offer any

"extraordinary and compelling reasons" to support his request for release.  18 U.S.C.

§ 3582(c)(1)(A)(i).  Additionally, even were Mr. Brown to offer an "extraordinary and

compelling reason" to support his request for release, which he did not, the Court would find that

the applicable statutory sentencing factors under Section 3553 do not support a reduction in his sentence.

### A.    Mr. Brown's Medical Conditions Do Not Constitute "Extraordinary and Compelling" Reasons for a Reduction in Sentence

Mr. Brown's Motion for Compassionate Release contends that the Court should grant his immediate release because the lack of treatment he is receiving for his medical conditions merits a reduction. (ECF No. 63, at 1.)  In support of his contention that his medical conditions warrant a reduction, Mr. Brown asserts that he "has mentally deteriorated and languished as his [anxiety and paranoid schizophrenia] have gone untreated." (ECF No. 63, at 6.)  Mr. Brown further provides that "[i]n October 2022, [his] anxiety worsened to the point where he fell from his bunk and fractured his shoulder during a panic attack" and that "his efforts to seek help from the BOP[]s['] psychiatric services have been denied." (ECF No. 63, at 6–7.)  Finally, Mr. Brown asserts he "has never received continued treatment for his shoulder injury" and "still experiences pain" in his right hand from an injury he incurred prior to his incarceration. (ECF No. 63, at 7.)

Given the record before it, the Court must conclude that Mr. Brown fails to allege that he is "suffering from a serious physical or medical condition" or "a serious functional or cognitive impairment" that "substantially diminishes [his] ability to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." *See* U.S.S.G. § 1B1.13(b)(1)(B).  Further, the record does not indicate that Mr. Brown is "suffering from a medical condition that requires long-term or specialized medical care that is *not* being provided and without which the defendant is at risk of serious deterioration in health or death." *See* U.S.S.G. § 1B1.13(b)(1)(C) (emphasis added).

Many of Mr. Brown's health conditions were present during his 2016 sentencing and the Court requested Mr. Brown "receive mental health treatment in accordance with the

16

recommendations in the accompanying report attached to the Presentence Report." (ECF No. 51, at 2.) Mr. Brown's records show that he is "currently enrolled in Psychology Services and participating in group sessions." (ECF No. 67, at 1.) Furthermore, a review of Mr. Brown's medical records does not show complaints of psychological issues or requests for mental health treatment. (*See* ECF No. 63-2 (sealed).)

As it pertains to Mr. Brown's physical health complaints, Mr. Brown's medical records show he received treatment from the BOP medical providers as well as outside orthopedic treatment. (ECF No. 67, at 1; *see* ECF No. 63-2, at 1–7, 14, 101–103.) During periods of time Mr. Brown alleges continued pain in his shoulder, he was seen "working out and actively doing pushups." (ECF No. 63-2, at 14). Mr. Brown was advised to take anti-inflammatory medication and "modify his activity and rest." (ECF No. 63-2, at 14.) However, Mr. Brown informed medical personnel that "he would not like to take ibuprofen or Tylenol as he 'doesn't like taking pills'" and was instead provided with an ice pack. (ECF No. 63-2, at 2.)

Considering the foregoing, the record at bar does not justify Mr. Brown's immediate release from federal imprisonment due to his medical conditions. There is no evidence that Mr. Brown's physical or mental complaints make him unable to provide self-care, nor does the record support Mr. Brown's contention that he is not being provided with adequate treatment. *See* U.S.S.G. § 1B1.13(b)(1)(B)–(C). Therefore, Mr. Brown's physical and mental health medical conditions do not warrant a reduction in his sentence.

### B. <u>Mr. Brown's Rehabilitative Efforts</u>

Mr. Brown further contends that the Court should grant his motion for compassionate release because, "[g]iven [his] struggles and violent experiences, his accomplishments over the past seven years of incarceration are remarkable." (ECF No. 63, at 11.) Mr. Brown informs the

Court that he "is working to obtain his GED and has taken numerous other courses offered to him, including exercise, personal growth, and self-care. Mr. Brown completed drug abuse treatment and has completed his financial responsibilities owed to the Court." (ECF No. 63, at 11–12.)

This Court commends Mr. Brown for his ongoing efforts to improve himself and prepare for life outside of prison. But Congress made clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). "Prisoners are *supposed* to follow the rules, take classes, work at a job, and otherwise attempt to improve themselves. That a prisoner does so means that he [or she] has met baseline expectations, not that he [or she] has done something extraordinary." *United States v. Logan*, 532 F.Supp.3d 725, 735 (D. Minn. 2021) (emphasis in original). Therefore, Mr. Brown's rehabilitative efforts alone are insufficient to create extraordinary and compelling circumstances and warrant relief.

**C.    The 3553(a) Factors Do Not Support a Reduction in Mr. Brown's Sentence**

Although Mr. Brown did not satisfy the "extraordinary and compelling" reason for compassionate release, even if he had, the Court concludes that the § 3553(a) factors weigh against his release. This Court speaks to those factors in the interest of creating a full record. 18 U.S.C. § 3553(a).

Upon review, the nature and circumstances of Mr. Brown's offense remain serious. Mr. Brown's criminal history, which qualifies him as a Career Offender pursuant to U.S.S.G. § 4B1.1, (ECF No. 60 ¶ 20), demonstrates that he presents an ongoing threat to the public, as he repeatedly disregarded the law, and his conditions of release will not sufficiently assure the safety of the community at this time. Mr. Brown's criminal history includes convictions for multiple drug offenses as an adult, assault, unlawful wounding, repeated convictions for criminal

trespass, and identity theft. (ECF No. 60 ¶¶ 29–40.) At the time he committed the underlying offense, he was still "under a criminal justice sentence for Unlawful Entry and Unlawful Wounding." (ECF No. 60 ¶ 42.) Thus, even when Mr. Brown was on supervision for parole, he was not deterred from committing criminal offenses and continued lengthening his criminal history. The BOP identifies him as an inmate at a high risk of recidivism. (ECF 67, at 2.)

As to any release plan, Mr. Brown does not propose conditions of release that would protect the safety of the community. Mr. Brown informs the Court that, if released, he would live with his uncle in Henrico County and has multiple job prospects through the company his uncle works for, his sister, or a friend. (ECF No. 63-5, at 1.) Mr. Brown also states that he would like to obtain his CDL license and attend community college. (ECF No. 63-5, at 1.) Finally, Mr. Brown asserts that he plans to work on his "mental health issues." (ECF No. 63-5, at 1.) However, it appears Mr. Brown had the same support and opportunities prior to his current term of incarceration. Therefore, reducing his criminal sentence likely would not deter him from committing future criminal acts and protect the safety of the community.

Mr. Brown notes that "he has never been able to receive the appropriate treatment for his anxiety or paranoid schizophrenia because he has neither disposable income nor health insurance" and that, since his incarceration, he "has mentally deteriorated and languished as his conditions have gone untreated." (ECF No. 63, at 6.) However, as discussed in detail above, no indication exists that Mr. Brown cannot receive appropriate treatment while incarcerated.

In *United States v. Martin*, the Fourth Circuit vacated and remanded the district court's denial of both defendants' motions to reduce sentence because the district court failed to address any new mitigating evidence when denying the motions. 916 F.3d at 397–98. The Fourth Circuit explained that if an individual is eligible for a sentence reduction, the district court must

19

give weight to the person's "past transgressions" as well as "the multitude of redemptive measures that [the person] has taken." *Id.* at 397.  However, Congress has made clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).  With these dictates in mind, the Court acknowledges and commends Mr. Brown's participation in BOP programs[18] and encourages him to continue to do so but finds that these measures do not warrant a sentence reduction due to the nature and circumstances of his underlying conviction, the totality of his record, and the need to protect the public.

In addition, Mr. Brown's disciplinary record does not support his request for release.  Mr. Brown has received eleven infractions for disciplinary infractions between 2019 and 2022.  (ECF No. 67, at 2.)  Included in these infractions are two sanctions for possession of a dangerous weapon, three infractions for refusing to obey an order, one sanction for refusing to work, and one infraction for fighting with another inmate.  (ECF No. 67, at 2.)  Thus, in addition to considering his "redemptive measures", *see Martin*, 916 F.3d at 397, the Court also notes that other of Mr. Brown's actions since incarcerated weigh against a finding of redemption and rehabilitation.  In total, consideration of the § 3553(a) factors would not support compassionate release even if this Court were to find an "extraordinary and compelling reason[]" to reduce Mr. Brown's sentence. *See* 18 U.S.C. § 3582(c)(1)(A).

---

[18] Mr. Brown has completed seven educational courses during his incarceration, including, among others, exercise, personal growth, and self-care, is working on completing his GED, and has completed Drug Education. (ECF No. 67, at 2; ECF No. 63, at 11–12; ECF No. 63-3, at 1.)

## V. Conclusion

For the reasons explained above, the Court will deny Mr. Brown's Request for

Compassionate Release, (ECF No. 58), and his Motion for Compassionate Release, (ECF No.

63).

An appropriate Order shall issue.

Date: 11/15/2024
Richmond, Virginia

_____ /s/
M. Hannah Lauck
United States District Judge